Dominic C. Backowski, Petitioner *v.* Workmen's Compensation Appeal Board (E. W. Tire Company), Respondents.

340

Submitted on briefs November 15, 1984, to Judges DOYLE and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Edward Jaffee Abes, Abes & Begler,* for petitioner.

*David P. Helwig, Sharlock, Repcheck, Engel & Mahler,* for respondents.

OPINION BY SENIOR JUDGE BARBIERI, December 6, 1985:

Dominic C. Backowski, Claimant, appeals here the order of the Workmen's Compensation Appeal Board

(Board), which sustained a decision of a referee in dismissing a claim petition for compensation filed by Claimant.

The referee's findings are conflicting. Compensable disability is established by the following:

2. On October 13 and October 16, 1979, claimant sustained a lumbar sprain which aggravated his preexisting developmental flaw in the fifth lumbar vertebra while performing his duties as a warehouse manager for employer on employer's premises.

3. Timely and proper notice of said injury was given to employer on the same dates.

There follow findings which are not in question establishing periods of disability for which full wages were paid by Claimant's employer with the result that Claimant's compensable period is limited to the time between December 17, 1979 and April 30, 1981. There is testimony of Charles M. Cohen, Ph. D., a psychologist, retained by Claimant's employer on September 10, 1981, that certain sedentary jobs had been available, reflected in a referee's finding, during periods from January 16, 1980 through February 25, 1981.

There are other findings, however, as follows:

14. Claimant failed to adduce competent medical evidence to establish a legal nexus between said injury and his alleged disability.

15. It was claimant's contention that he was entitled to a suspension of compensation from October 17, 1979, through October 22, 1979, and for an indefinite period from April 30, 1981, and that he was entitled to compensation for total disability from December 18, 1979, through April 29, 1981.

16. The reasonable inference is that claimant preferred to complete his education in com-

puter programming rather than return to work for employer or for any other firm.

17. It is significant that Dr. Phillips, claimant's medical witness, found or made no definite positive findings as a result of his physical examination of claimant on November 11, 1979. It was only the result of x-rays that the developmental flaw (spondylolysis and spondylolisthesis) was discovered.

18. Said flaw was not work-related.

19. Claimant failed to sustain his burden of proof.

Other findings state that Claimant was paid full wages during disability periods, until he was laid-off as of December 17, 1979, with failure of the employer to rehire him as of March 1, 1980, when the lay-off period ended. As noted, Claimant seeks total disability compensation for the period following December 18, 1979 to April 29, 1981, and claimed at the referee level a suspension thereafter for continuing partial disability, admittedly without loss of earnings. The Board concluded that the burden of proof remained upon the Claimant so that the sole issue before the Board was whether the referee in disallowing compensation capriciously disregarded competent evidence. The Board stated:

The claimant has alleged total disability from December 17, 1979, when he was laid off from work until April 30, 1980 [sic], when he obtained his new job. The medical testimony by both parties clearly established that claimant's injury did prevent him returning to his job in his former capacity. The testimony also indicated that the claimant was able to work in sedentary employment as long as he refrained from lifting heavy objects.

The Board went on to indicate, relying upon the deposition of Dr. Cohen that his detail of sedentary employments which once existed in the Pittsburgh area was adequate to support the referee's determination that Claimant had no continuing disability for which compensation was payable.

First of all, there can be no question on review of the record in this case that the findings on which the referee and Board predicated their denial of benefits are in capricious disregard of the competent evidence. Specifically, the uncontradicted evidence is counter to the referee's Findings of Fact Nos. 14 and 19 quoted above.[1] The only medical testimony in the case, that of claimant's expert medical witness, Dr. Howard T. Phillips, and of defendant's expert, Dr. Robert F. Botkin, both qualified specialists in orthopedics, establishes without disagreement that Claimant suffered the disability as claimed from work injuries by aggravation of Claimant's preexisting condition of spondylolysis.[2]

Dr. Phillips testified:

. . . .

---

[1] Findings Nos. 15, 16, 17 and 18 have no significance and do not affect the outcome of this case. As to No. 18, Section 30(c)(1) of the Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411, specifically provides recovery "regardless of the previous condition" of the claimant and our courts have held that proof need only be presented that the disability resulted from the injury, not from the normal progress of the pre-existing physical defect, and that recovery may not be denied on the basis that the pre-existing condition rendered the claimant more susceptible to injury than an entirely normal person. *Halaski v. Hilton Hotel*, 487 Pa. 313, 409 A.2d 367 (1979).

[2] Spondylolysis is described as a

[W]eakness of the lower part of the lumbar spine, probably developmental in nature, seen in approximately 7 per cent of the general population.

Deposition of Dr. Phillips at page 6.

Q. Prior to these incidents in October 1979, did Mr. Backowski relate to you whether his symptoms were symptomatic?

A. He had complained of no symptoms prior to his injury.

Q. What role did these incidents play—at work, the fall and also the tires falling on him —in his condition which you diagnosed?

A. I suspect it aggravated a pre-existing condition.

Q. Is that your opinion?

A. Yes.

Q. When you say 'I suspect', do you have an opinion, within a reasonable degree of medical certainty, these symptoms were an aggravation of a previous condition?

A. Yes.

. . . .

Q. What role did these incidents at work, in October 1979, play on this pre-existing condition of spondylolysis-spondylolisthesis?

A. I believe it was a situation that caused the condition to be painful to him after the injury.

Defendant's expert, Dr. Botkin, testified:

Q. Would you attribute whatever problems Mr. Backowski may have experienced to that developmental flaw?

A. Well, I think we have to accept the fact that trauma precipitated pain in an otherwise and previously asymptomatic back, but which was the site of a developmental flaw.

Q. What is the technical medical term for this flaw?

A. Spondylolisthesis and spondylolysis.

As to disability, Dr. Botkin testified:

. . . .

Q. Are you able to say whether or not Mr. Backowski remained disabled from lifting weights on a regular basis in excess of 15 pounds for the entire period from October, 1979, through the date of your examination?
A. I personally would have advised him against it.

. . . .

Q. So about December of '79 when he was laid off from his work because of lack of business he could have kept doing that light and sedentary job, but it was the heavier job that he couldn't perform; is that right?
A. That's my opinion exactly.
Q. And that is a result of the back sprain superimposed on the preexisting condition?
A. Yes.

Since there is no disputing Claimant's work-related disability and, therefore, his right to benefits during the period of his claim, from December 17, 1979 to April 29, 1981, and the suspension thereafter, we turn now to the contention that, nevertheless, the benefits should be denied because Claimant was admittedly able to perform light, sedentary work during that period of time and there is proof of availability of suitable employment.

It is true that the employer's psychologist, Dr. Cohen, testified from a file that certain sedentary employment had existed in the Pittsburgh area during Claimant's unemployed and uncompensated period, December 17, 1979 to April 19, 1981, but Dr. Cohen did not come into the case until September 30, 1981, and he described job opportunities that allegedly were available during periods from January 16, 1980 to February 25, 1981. There is not one item of testimony indicating that any of the jobs described

were made known to Claimant at any time during the period,[3] nor is there any other basis for a finding that any of the suggested employers would have hired the Claimant if he had applied.

In our recent opinion in the case of *Kachinsky v. Workmen's Compensation Appeal Board*, 91 Pa. Commonwealth Ct. 543,      A.2d      (1985), we stated:

The work proposed for a partially disabled claimant must be *actually* available, that is, in fact, within his reach, and it must be brought to his notice by the employer. A position may be found to be actually available, or within the claimant's reach, only if it can be performed by the claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence. The employer does not have to produce a job offer, *Don-Mark Realty Co. v. Milovec*, 11 Pa. Commonwealth Ct. 448, 314 A.2d 349 (1974), but positions which are pie-in-the-sky, often described by vocational experts as sedentary or light or requiring little lifting, do not without additional description of their physical demands, establish actual availability of work which a claimant with particular physical limitations can do. *4156 Bar Corp. v. Workmen's Compensation Appeal Board*, 63 Pa. Commonwealth Ct. 176, 438 A.2d 657 (1981); *State Products Corp. v. Workmen's Compensation*

---

[3] Dr. Cohen testified:

Q. When you categorize these jobs within certain dates, you don't know whether those jobs were available before or after those dates, do you?

A. Correct.

Appeal Board, 61 Pa. Commonwealth Ct. 366, 434 A.2d 207 (1981).

*Accord: Woytach v. Workmen's Compensation Appeal Board (City of Scranton);* Pa. Commonwealth Ct. , 498 A.2d 1390 (1985).

We believe that the form of *post hoc* revelation of allegedly available employment in this case has no evidentiary competence to establish the availability of job opportunities on which the right to compensation can be vitiated. The basis for suspension of benefits in a case like this one where partial disability is established, and admittedly claimant can perform sedentary work, would be the claimant's refusal to accept available employment. He cannot refuse, of course, what has not been revealed or made available to him. The burden is defendant's as stated in *Kachinsky* and *Woytach,* and it is to show that the job was "in fact within reach." See also, *Yellow Freight System v. Workmen's Compensation Appeal Board (Dennis),* 32 Pa. Commonwealth Ct. 147, 377 A.2d 1304 (1977); *Workmen's Compensation Appeal Board (Pavey) v. State Workmen's Insurance Fund,* 19 Pa. Commonwealth Ct. 605, 339 A.2d 158 (1975). Indeed, even if the job opportunity is actually communicated to the claimant and he applies for it, but is rejected, defendant has failed to meet its burden to prove that the suggested job is available to the claimant. *St. Joseph's Hospital v. Workmen's Compensation Appeal Board (Stokes),* 52 Pa. Commonwealth Ct. 265, 415 A.2d 957 (1980).

We believe that a proper example of the steps necessary for an employer to meet its burden of proof to establish that sedentary employments are "in fact within reach" of a partially disabled employee are those set forth and approved by this Court in the case of *Lopez v. Interstate Container Corp.,* 54 Pa. Commonwealth Ct. 472, 421 A.2d 1248 (1980). In that

case the vocational expert interviewed the claimant and arranged job interviews and, "on at least one occasion, personally accompanied the claimant to an interview." There was proof that in one instance "the hiring authority was aware of the claimant's physical limitations and was willing to hire the claimant prior to the interview, . . . ." As we noted there, "the employer need not show existence of an actual offer of employment, . . . (citation omitted) . . . The employer discharged its burden of proof by establishing availability of positions which the claimant is *capable of obtaining.*" (Emphasis added.) 54 Pa. Commonwealth Ct. at 476, 421 A.2d at 1250. In this connection, we also noted with approval the referee's action there in not including as available to claimant a position where the employer's representative testified he would not hire a person with claimant's physical restrictions.

For the foregoing reasons, we hold that Claimant is entitled to total disability benefits for the period December 18, 1979 through April 29, 1981, with a suspension thereafter and, accordingly, we will reverse.[4]

### ORDER

Now, December 6, 1985, the order of the Workmen's Compensation Appeal Board as of its No. A-82930, dated May 19, 1983, is hereby reversed and this case is remanded for computation of benefits and for an order providing a suspension of benefits as of April 30, 1981, all as required in the foregoing opinion, and for such other entitlements as may be due under the circumstances.

Judge WILLIAMS, JR., did not participate in the decision in this case.

---

[4] We decline the Respondent's request that we reconsider the decision of this Court dated May 19, 1983, denying Respondent's motion to quash the instant Petition for Review.

DISSENTING OPINION BY JUDGE DOYLE:

Respectfully, I must dissent. This case presents an unusual factual situation because the injury occurred on October 13th and 16th in 1979, but no claim petition was submitted until March 18, 1981.

After Claimant returned to work following his injuries, he performed his normal duties for approximately one month and then was switched to a counter job entailing light duty work. Claimant continued to receive his full pay throughout the time he was injured and while he was performing his counter job. Although the employer was notified of the injuries, no claim petition was filed by Claimant until seventeen months after the injury.

On December 17, 1979, Claimant was laid off for economic reasons. On approximately March 1, 1980, the employer's general layoff ended, but the employer did not recall Claimant for work (nor did Claimant ask to be recalled). In January, 1980, however, Claimant enrolled in a computer-programming school and completed the course in May, 1981. On April 30, 1981, a month before he graduated after one and one-half years of training in computer programming, Claimant became employed by a different firm as a manager of data processing without a loss of earnings. (Referee's Findings Nos. 8, 10, 11)

As indicated, Claimant filed his claim petition a full seventeen months after the injury and only one and one-half months before his graduation from the training in his new occupation. He is contending now that he is entitled to a suspension of compensation from October 17, 1979, through October 22, 1979, and for an indefinite period from April 30, 1981, and that he is further entitled to full compensation for total disability from December 18, 1979 through April 20,

1981. For all but one month of this latter period he was going to school full time.[1]

When the majority opinion here imposes on the employer an obligation to make known to Claimant the availability of sedentary job offerings, it seems to me that it imposes on the employer an impossible task. The employer had no knowledge of Claimant's claim when those jobs were available. Claimant's claim had not yet been filed. Therefore, why would the employer find it necessary to inform Claimant of their availability?

The referee found that Claimant "failed to adduce competent medical evidence to establish a legal nexus between said injury and his alleged disability." (Finding No. 14). The Board reversed the referee because "[t]he medical testimony by both parties clearly established that claimant's injury did prevent him returning to his job in his former capacity." But the Board went on to affirm the referee and deny benefits on the basis that "[t]he testimony also indicated that the claimant was able to work in sedentary employment as long as he refrained from lifting heavy objects." The Board found that the employer "clearly established by sufficient, competent evidence that there was work available which the claimant was capable of performing." Claimant never challenged this job availability, but challenged instead his ability to perform these jobs because of their various physical requirements.

Succinctly and in summary, it is my opinion that when an employer is in a situation where it is not aware of an employee's claim, and the employee has

---

[1] The referee, in finding number 16, found: "The reasonable inference is that claimant preferred to complete his education in computer programming rather than return to work for employer or for any other firm.

not established that he or she has been injured or that any disability has been suspended, the employer should not be made to meet an impossible burden to establish that it made known to the employee the availability of work which was not sought.